# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7597 | **DATE** | 8/26/2002 |
| **CASE TITLE** | MAURICE GRIFFIN vs. JOLIET P.O. FILIPIAK, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for summary judgment [15-1] is denied. ENTER MEMORANDUM OPINION AND ORDER. Status hearing set for 9/6/02 at 9:30 a.m.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
Notified counsel by telephone.
✓ Docketing to mail notices.
Mail AO 450 form.
Copy to judge/magistrate judge.

CG courtroom deputy's initials

AUG 27 2002 date docketed
15 docketing deputy initials

Document Number 35

date mailed notice
mailing deputy initials

| | |
|---|---|
| MAURICE GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 00 C 7597 |
| ) | |
| Joliet Police Officers FILIPIAK and ) | Judge Ronald A. Guzmán |
| NICODEMUS, individually, and as ) | |
| agents and employees of the City of ) | |
| Joliet ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maurice Griffin ("Griffin") has sued the City of Joliet and Joliet Police Officers Filipiak and Nicodemus in their individual and official capacity for alleged violation of 42 U.S.C. § 1983 ("section 1983"). Defendant City of Joliet was terminated as a party on May 24, 2001. Before the Court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56. For the reasons stated below, the motion is denied.

### Facts

Unless otherwise noted, the following facts are undisputed. On March 5, 1999, Joliet Police Officers Filipiak and Nicodemus were patrolling in a marked police squad car in an area adjacent to the Housing Authority complex in Joliet, Illinois. (Defs.' LR 56(1)(a)(3) ¶¶ 1-3.) Filipiak worked in that area for three and a half years, knew it to be an area of high drug activity, and was familiar with most of the residents of that public housing project. (*Id.* ¶¶ 3-5.)

1

On March 5, 1999, Filipiak observed Griffin near the Housing Authority complex and noted that he was someone unfamiliar. (*Id.* ¶ 6.) Filipiak and his partner, Nicodemus, pulled the squad car alongside Griffin and inquired as to his name. (*Id.* ¶ 7.) Griffin identified himself. (*Id.*) When Griffin's name was entered into their mobile data terminal ("MDT"), the officers learned that there was an outstanding arrest warrant for Griffin. (*Id.* ¶ 8.) They had also learned from their MDT that Griffin had been arrested nineteen times for various charges including assault and drug-related offenses, and he had been convicted on five of those arrests. (*Id.*)

The police officers placed Griffin under arrest, handcuffed him, and placed him in the rear passenger seat of the squad car. (*Id.* ¶ 9.) Up to this point, Griffin had been speaking in a garbled manner, but the officers could understand him if they listened really carefully. (*Id.* ¶ 10.) As they drove away, Griffin continued to mumble. (*Id.* ¶ 11.) Filipiak asked Griffin if he had something in his mouth and instructed him that if he had something in his mouth, he should spit it out. (*Id.* ¶¶ 12, 15.) Griffin opened his mouth only about 3/4 of an inch and told the officers that because he had a broken jaw he could not open his mouth any wider. (*Id.* ¶ 17.) Filipiak understood Griffin's statement to be that he had a broken jaw sometime in the past and that his mouth would not open very widely because of that. (*Id.* ¶ 18.)[1]

Griffin claims that he told the officers that he had jaw surgery two months prior to the

---

[1] On January 15, 1999, Griffin's jaw was broken in an incident unrelated to the Joliet Police. (*Id.* ¶ 31.) After his original jaw surgery, Griffin's jaw was wired shut and he was supplied with a pair of clippers for use in case of an emergency. (*Id.* ¶ 32.) On the evening of March 4, 1999, Griffin used the clippers to remove the wires which were holding his jaw shut. (*Id.* ¶ 33.) On March 5, 1999, Griffin was planning to go to Northwestern Hospital and have the wires replaced, though he had no appointment. (*Id.* ¶ 34.) After removing the jaw wires with the clippers, Griffin's mouth would hardly open. (*Id.* ¶ 35.) He found it difficult to talk, although his girlfriend understood him. (*Id.* ¶ 36.)

2

incident in question. (Pl.'s Aff. ¶ 1.)[2] The police officers claim that Filipiak used a flashlight to view Griffin's mouth and that neither of them touched Griffin's face or mouth. (Defs.' LR 56.(1)(a)(3) ¶¶ 19-20.) Griffin claims that Filipiak placed one hand on top of Griffin's head and used his other hand to squeeze Griffin's cheeks and forced open the lower jaw. (Pl.'s Aff. ¶ 1.) At that time, Griffin claims that he heard and felt a "pop" in his mouth which he claims caused him pain. (*Id.*)

After viewing Griffin's mouth, Filipiak was satisfied that nothing was in Griffin's mouth. (Defs' LR 56.(1)(a)(3) ¶ 19.) The officers proceeded to the Joliet Police Station to book Griffin. (*Id.*) Defendants claim that in the booking area Griffin carried on multiple conversations with other arrestees and did not complain of any pain or injury and that Griffin did not appear to have any injuries to his face or mouth. (*Id.* ¶¶ 21-22.) Griffin does not recall the booking process at the Joliet police station. (*Id.* ¶ 23.)

When Griffin was later transported to the Will County Adult Detention Facility ("ADF"), he told the intake officer that he had a broken jaw. (*Id.* ¶ 24.) A nurse was summoned to evaluate Griffin and advised that a medical clearance form must be obtained before Griffin can be accepted at ADF. (*Id.* ¶ 25.) Griffin told the nurse "these guys made me open my mouth and injure it more cause it was too wide." (*Id.* ¶ 26.) The nurse described Griffin as "alert" and "oriented." (*Id.* ¶ 27.) She also noted that his speech was garbled and that he had no signs of ecchymosis (bruising) or overt facial swelling. (*Id.*) Officer Filipiak transported Griffin to Silver Cross Hospital for evaluation. (*Id.* ¶ 28.) Other officers transported Griffin back to ADF because Filipiak's shift had ended. (*Id.* ¶ 29.) After Griffin was released from the county jail,

---

[2] When plaintiff filed his response to defendants' motion for summary judgment on January 23, 2002, he was appearing as a *pro se* litigant at the time. His initial declaration was technically insufficient. However, the Court allowed plaintiff to cure these shortcomings and to comply with the procedural requirements.

3

he went to the emergency room at Northwestern Memorial Hospital where he underwent a surgical procedure. (Pl.'s Aff. ¶ 2).

## Discussion

Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and which the party will bear the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A complete failure of proof regarding an essential element of the case renders all other facts immaterial. *Id.* at 323. Disputed facts are material if they might affect the outcome of the suit. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citing *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996)). The moving party bears the initial burden of demonstrating an absence of material facts entitling it to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has sustained its initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the opposing party must do more than simply show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When considering the evidence submitted by the parties, the court does not weigh it or determine the truth of the asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must view the record and draw all reasonable inferences in the light most favorable to the non-moving party. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 247.

4

Section 1983 establishes a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 132 (1994)). To state a claim under section 1983, a plaintiff "must show (1) action taken under color of state law, . . . [and] (2) a deprivation of a right protected by the Constitution." *Brown v. City of Lake Geneva,* 919 F.2d 1299, 1301 (7th Cir. 1990) (quoting *Adickes,* 398 U.S. at 150).

While Griffin's initial response[3] to the defendants' motion for summary judgment fell short of complying with the requirements of the Local Rule 56.1, and the plaintiff's declaration was not technically sound, the plaintiff was given the chance to cure the shortcomings of those documents. The Court notes that the plaintiff has made a good faith effort to comply with the rule and that the defendants have not filed any motion to strike plaintiff's response. *See Howard-Ahmad v. Chicago Sch. Reform Bd. of Trs.,* 161 F. Supp. 2d 857, 862 (N.D. Ill. 2001) (refusing to disregard entire response of opposing party when certain responses conformed with local rule); *Wright v. Bogs Mgmt., Inc.,* No. 98 C 2788, 2000 WL 1774086, at *3 (N.D. Ill. Dec. 1, 2000) (declining to strike entire LR 56.1 statement when party has attempted to comply with local rule); *Muller v. Synthes Corp.,* No. 99 C 1492, 2002 WL 460827, at * 4 (N.D. Ill. Mar. 26, 2002) (mentioning prior granting of leave to file amended motion when it was not in compliance with local rule); *Henderson v. Clark Oil & Ref. Corp.,* 639 F. Supp. 105, 108 (N.D. Ill. 1986) (allowing party to cure its affidavit by directing it to submit signed and notarized document). Therefore, rather than striking the plaintiff's response because of technical non-compliance, the

---

[3] When plaintiff filed its response to defendants' motion for summary judgment on January 23, 2002, he was appearing as a *pro se* litigant at the time. After the response was filed, plaintiff secured counsel and the court granted leave to file an appearance on behalf of the plaintiff. On June 3, 2002, plaintiff's counsel filed a supplementary response to the motion for summary judgment.

5

Court allowed the plaintiff to cure his mistakes and the matter is now ready for the Court's consideration.

The law is well-settled that when a police officer makes an arrest, it is reasonable for the arresting officer to search the arrestee's person as a means of ensuring that the arrestee does not have a weapon which will endanger the officer's safety or that the arrestee does not conceal or destroy evidence. *Chimel v. California,* 395 U.S. 752, 762-63 (1969). Police officers are authorized to use reasonable force. However, if a police officer uses excessive force during an arrest, the officer violates the individual's Fourth Amendment rights. *Graham v. Connor,* 490 U.S. 386, 394 (1989). The "reasonableness" of the force used must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 20-22 (1968)). This should allow for the fact that police officers must often make split-second judgments about the amount of force that is necessary in a particular situation. *Id.* at 396-97.

The excessiveness of the force is evaluated under an "objective reasonableness" standard, through which courts assess whether the officers' actions are "objectively reasonable" in light of the facts and circumstances of each situation, regardless of their underlying intent or motivation. *Id.* at 397. In determining whether a search is reasonable, courts weigh several factors to determine whether the society's interest in conducting the search outweighs the individual's interests in privacy and security. *See Winston v. Lee,* 470 U.S. 753, 760 (1985); *Kraushaar v. Flanigan,* 45 F.3d 1040, 1045 (7th Cir. 1995). These factors include: 1) the severity of the crime, 2) whether the suspect poses an immediate threat to the safety of the officers or others, and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Brownell v. Figel,* 950 F.2d 1285, 1292 (7th Cir. 1991) (citing *Graham,* 490 U.S. at 396).

Some of the facts disputed by Griffin include a few contentions which are not material to the issue at hand. One of these facts refers to the comments which the plaintiff made to the ADF nurse regarding the manner in which his jaw was initially injured. For the purpose of this motion, both parties agreed that Griffin's jaw was broken in an incident unrelated to the Joliet Police almost two months before the arrest at hand took place. Another assertion offers an alleged explanation why the nurse noted no facial bruising and swelling. However, the plaintiff does not dispute the fact that he had no visible signs of bruising or swelling on its face at the time the ADF nurse examined him. Lastly, the plaintiff also disputes whether the police officers pulled away while they checked their records. These facts are not material because they are not determinative of the outcome of the suit.

However, material facts are disputed by the parties to this lawsuit. They include such pivotal questions as whether officer Filipiak used his hands to force the plaintiff's mouth open, whether the officers heard and understood plaintiff's statement that he had jaw surgery two months before the alleged incident and whether the breaking of the plaintiff's jaw was directly caused by the officer's alleged actions.

The evidence submitted by plaintiff in support of the above disputed facts include Griffin's own affidavit that Filipiak used force to squeeze plaintiff's cheeks after he was told that plaintiff had recently undergone surgery to his jaw, medical records from Northwestern Memorial Hospital from March 9 and March 10, 1999, a prescription order for 600 milligrams of Motrin from Cermak Health Services of Cook County dated March 6, 1999, medical records from Silver Cross Hospital dated March 5, 1999, Joliet Police Department Complaint Receipt Form dated March 11, 2002 and an interoffice memorandum of the City of Joliet Police

7

Department dated April 15, 1999.[4] On the other hand, the evidence submitted against these arguments includes the affidavit of officer Filipiak stating that he did not touch plaintiff's face or mouth, the medical notes of the ADF nurse taken dated March 5, 1999, and Griffin's deposition.

Defendants dispute that any force was used at all, let alone unreasonable force. The police officers claim that Filipiak used a flashlight to view Griffin's mouth and that neither of them touched Griffin's face or mouth. Griffin, of course, claims that Filipiak placed one hand on top of Griffin's head and used his other hand to squeeze Griffin's cheeks forcing open his lower jaw. These actions allegedly led to breaking plaintiff's previously fractured jaw. This dispute is material and it cannot be resolved on the instant summary judgment motion.

Plaintiff also claims that he told the officer about the recent surgery of his jaw. However, Filipiak claims that he understood Griffin's statement to be that he had a broken jaw sometime in the past and that his mouth would not open very widely because of that. Since the difference between the two statements is substantial, this dispute cannot be resolved in a summary judgment motion. If the defendant had used his hands to force open plaintiff's mouth, despite knowing about the surgery, then the amount of force used could be excessive under the balancing test enunciated in *Graham*.

First, the possible possession of a minimal amount of drugs inside plaintiff's mouth does not constitute a severe crime. *See Adams v. Gliwa*, No. 94 C 3557, 1996 WL 164359, at *6 (N.D. Ill. Apr. 2, 1996). Second, while it is true that the officers were confronted with an individual with an arrest record for both violent and drug related charges, at the time of the incident, Griffin did not pose an immediate threat to the safety of the officers or others. He

---

[4] The plaintiff's initial *pro se* response included only his own affidavit and a two-page exhibit detailing the surgical procedure the plaintiff underwent after he was released from jail. The rest of the evidence was introduced by the supplementary response submitted by the attorney he procured subsequent to his initial response.

8

was already in custody and placed in the back of the squad car. Thirdly, the plaintiff was not actively resisting arrest or attempting to evade arrest by flight. The defendants have conceded in their brief that the arrest was uneventful. Moreover, Griffin appeared to be cooperating with the officers' requests and opened his mouth 3/4 of an inch. Nor was there any danger of losing evidence. Griffin was already in custody and in the squad car. He could have been kept under surveillance and a warrant obtained providing for retrieval of any drugs. If indeed there were any. There was no need here for a split second decision. Nor, was there any physical danger to be averted. An individual's right to preserve his/her bodily integrity, health, and safety may outweigh the justification for using a certain amount of force to preserve possible evidence of a crime. However, the Court cannot engage in judging the credibility of either party and therefore cannot decide as a matter of law that defendants had touched plaintiff's face or mouth in any manner.

Next, the defendants also claim that they are entitled to summary judgment because plaintiff failed to prove a causal relationship between the search of the mouth and the re-fracture of his jaw. In response to this assertion, plaintiff has submitted evidence consisting of medical records of Northwestern Memorial Hospital dated March 9 and March 10, 2002, records of Silver Cross Memorial Hospital, and an interoffice memorandum of the City of Joliet Police. The Northwestern Memorial Hospital medical records include self-reported statements of the plaintiff to the attending physician – that he was involved in an altercation in which his jaw was forced open – and notations that the plaintiff was non-compliant with his follow up and had cut himself out of the medical devices installed to keep his jaw fixed in place (Pl.'s Suppl. Resp. Ex. 1). The report also confirmed that clinical and radiographic findings were consistent with failed deep hardware and fracture of the mandible. *Id.* While it is true that the report is

silent on what exactly caused plaintiff's fracture and failure of the appliances, the report does not exclude the possibility that plaintiff received an injury during the alleged altercation.[5] Moreover, the records of Silver Cross Hospital clearly indicate a refracture of the left mandible and the interoffice memorandum confirms that while it is not certain when and how the refracture occurred, a refracture did occur. The resolution of this issue of fact will, therefore, depend in substantial part at least on whose version of the events the trier of facts believes..

The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury." *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248). As outlined above, the Court has found sufficient disagreement about material facts in this case to deny defendants' summary judgment motion.

Defendants next argue that they are entitled to qualified immunity. State officials who occupy positions with discretionary authority and are acting in their official capacity may have qualified immunity from claims alleging that they violated the constitutional rights of an individual. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000). These state actors "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether qualified immunity applies is a question of law. *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir. 1987). Even though the determination of qualified immunity is a legal issue, this determination is not answered in the abstract but in reference to the particular facts of the case. *Rakovich v. Wade*, 850 F.2d 1180, 1202 (7th Cir. 1988).

---

[5] The court notes that even if the supplemental response had not been filed, the two-page exhibit attached to the plaintiff's response would have been sufficient to establish that a refracture occurred and a dispute as to how and when the refracture occurred was already apparent from that single document.

To determine if immunity attaches to the actions of the officers, the court needs to apply a two-prong test. *Ineco v. City of Chicago*, 286 F.3d 994, 1000 (7th Cir. 2002) (referring to the test recently enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001)). First, the court must determine whether the alleged facts show that the officer's conduct violated a constitutional right. *Id.* This initial inquiry must be in the light most favorable to the party asserting the injury. *Saucier*, 533 U.S. at 201. Since a violation of plaintiff's Fourth Amendment rights could be made out on a favorable view of plaintiff's submissions, we must proceed to the next step and ask whether the right was clearly established at the time that the disputed conduct took place. *Id.* at 201-02.

In determining whether a right was clearly established at the time the defendant acted, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). The Supreme Court has stated that the "relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. The Seventh Circuit has set forth the following guideline for deciding qualified immunity questions: "Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Landstrom v. Ill. Dep't of Children & Family Servs.*, 892 F.2d 670, 675 (7th Cir. 1990). The Court is cognizant that defining the right too narrowly to the facts of the case may allow state officials to escape liability, while defining the right too broadly may endanger allowing an unwarranted imposition of liability.

Thus, the question presented is whether if a person resists assenting to a demand to

11

search a bodily cavity by an officer, can that person be forced to comply with the respective request? If the answer is yes, then the next question is, how much force can an officer employ in performing such a forceful search? The law is clear that an individual has a right not to be forced to do something which may injure him in a physical or non-physical manner. The Fourth Amendment protects against damage to the individual's sense of personal privacy and security, regardless of whether the intrusion injures the physical person of the individual. *United States v. Husband*, 226 F.3d 626, 632 (7th Cir. 2000). However, in cases where the search involves a physical intrusion, these privacy concerns are supplemented by the person's interest in maintaining bodily integrity and control. *Id.*

In the case at hand, the officers claim that the search was in the context of searching for evidence of drugs. Nevertheless, such a search is still limited by an individual's rights under the Fourth Amendment. *See Rochin v. California*, 342 U.S. 165, 172 (1952) (finding that forceful attempt to extract capsules from suspect's mouth and subsequent stomach pumping were unconstitutional violations of Fourth Amendment)[6]; *Winston*, 470 U.S. at 767 (holding proposed surgery to recover bullet unreasonable); *see also Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 849, (1992) ("It is settled now . . . that the Constitution places limits on a State's right to interfere with a person's most basic decisions about . . . bodily integrity.")

Moreover, this Court has held that summary judgment based on qualified immunity is not proper when the question of immunity turns on issues of disputed fact. *Estate of Palma v. Edwards*, No. 99 C 4896, 2001 WL 1104716, at * 3 (N.D. Ill. Sept. 19, 2001). As previously

---

[6] Although the Court cites *Rochin* as an example of unconstitutional police conduct, the Court recognizes that jurisprudence has shifted from a "shocks the conscience" standard under the Due Process Clause to one of objective reasonableness under the Fourth Amendment. *Lester v. City of Chicago,* 830 F.2d 706, 711 (7th Cir. 1987). However, the law is clear that if *Rochin* were considered today, it "would be treated under the Fourth Amendment, albeit with the same result." *Sacramento v. Lewis,* 523 U.S. 833, 850 n.9 (1998).

12

discussed, there is a genuine issue of material fact as to what force was used, the amount of force used and whether the defendants comprehended what plaintiff claims to have said regarding his recent jaw surgery. Whether defendants' or Griffin's version is more credible is not an issue properly decided by the Court on a motion for summary judgment. Should it be determined that the officers forcibly opened plaintiff's mouth despite having notice of the plaintiff's condition due to surgery, then they should have known that such use of force was excessive under the circumstances and that the use of such force was clearly unconstitutional at the time of the alleged conduct.

While the Court recognizes that "qualified immunity questions should be resolved at the earliest possible stage of a litigation," *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987), based on the specific facts of this case, the Court cannot find defendants are entitled to qualified immunity as a matter of law at this stage of the proceedings. The aforementioned genuine issues of material facts combined with one's right not to be subject to forced body cavity searches which likely will cause injury precludes a finding of qualified immunity at this time. The Court notes that officers can obtain a search warrant to examine one's body or, better yet, specific parts such as an individual's mouth. *See, e.g., United States v. Husband*, 226 F.3d 626, 628 (2000).

Lastly, we turn to officer Nicodemus claim of qualified immunity. This claim depends on the same set of disputed material facts described above. Omissions as well as acts of violence may violate civil rights. A police officer's failure to intervene when other officers use unnecessary force against a citizen is a violation of the citizen's constitutional rights and actionable under § 1983. *Yang v. Hardin*, 37 F.3d 282, 284 to 286. It is not necessary to prove that officer actively participated in striking plaintiff. *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982). An officer who is present and fails to intervene to prevent other law enforcement

13

officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Anderson v. Branen*, 17 F.3d 552, 556 (2nd Cir.1994); accord *Byrd v. Clark*, 783 F.2d at 1006-07. The reasoning of the Byrd court has been adopted by other courts considering an officer's duty to intervene. *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982), cert. denied, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir.1981); *Harris v. Chanclor*, 537 F.2d 203, 206 (5th Cir.1976); *Skevofilax v. Quigley*, 586 F.Supp. 532, 543 (D.N.J.1984); *McQurter v. City of Atlanta*, 572 F.Supp. 1401, 1415 (N.D.Ga.1983); *Davidson v. Dixon*, 386 F.Supp. 482 (D.Del.1974), aff'd, 529 F.2d 511 (3d Cir.1975). Therefore, the law is well established that Nicodemus had a duty to intervene. He should clearly have known that he could not stand by and simply watch his partner if his partner was engaging in the use of excessive force. As we have already determined, the material facts in this regard are in dispute and we cannot say at this time that Officer Filipiak is entitled to qualified immunity. For the same reasons we also cannot say that Officer Nicodemus is entitled to qualified immunity at this time.

## Conclusion

For the reasons set forth in this Memorandum Opinion and Order, defendants' motion for summary judgment [doc. no. 15-1] is denied.

**SO ORDERED:**

ENTER 8/26/02

*Ronald A. Guzman*
HON. RONALD A. GUZMAN
**United States Judge**